UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SAMANTHA T.,[1]

Plaintiff,

Case # 20-CV-201-FPG

v.

DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

## INTRODUCTION

Plaintiff Samantha T. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 18, 25. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In January 2017, Plaintiff applied for SSI with the Social Security Administration ("the SSA"). Tr.[2] 143. She alleged disability since January 2016 due to manic depression, mood swings, lack of energy, ADHD, PTSD, seizures, blackouts, and dizziness. *Id.* In February 2019, Administrative Law Judge Elizabeth Ebner ("the ALJ") issued a decision finding that Plaintiff is

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 16.

not disabled. Tr. 63-76. In December 2019, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 2017, her application date. Tr. 65. At step two, the ALJ found that Plaintiff had severe impairments of seizures, asthma, anxiety, depression, and PTSD. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 66.

Next, the ALJ determined that Plaintiff had the RFC to perform light work with additional limitations. Tr. 68. At step four, the ALJ found that Plaintiff could perform past relevant work as a sorter. Tr. 73. In the alternative, the ALJ found at step five that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 74-75. The ALJ therefore found that Plaintiff was not disabled. Tr. 75-76.

### II. Analysis

Plaintiff argues that remand is warranted on three grounds: (1) the ALJ erroneously evaluated the opinion of treating social worker Amanda Ciesla; (2) the ALJ relied on her lay judgment to craft the mental RFC; and (3) the ALJ failed to address a limitation on interactions with supervisors. The Court addresses, and rejects, each argument in turn.

#### a. Ciesla's Opinion

Ciesla is a licensed social worker and was one of Plaintiff's mental-health counselors. In December 2018, she completed a questionnaire in which she opined, *inter alia*, that Plaintiff would be absent more than four days per month due to her mental impairments. Tr. 527. For two reasons, the ALJ gave "little weight" to this opinion. Tr. 73. First, the ALJ stated that the opinion was completed in "October 2013," which was "well before the relevant period." *Id.* Second, the

opinion was not consistent with the record evidence. *Id.* On appeal, Plaintiff argues that the ALJ mischaracterized the date of the opinion and erroneously concluded that Ciesla's opinion was inconsistent with the record. ECF No. 18-1 at 11-12. The Court is not persuaded that remand is warranted.

While it does appear that the ALJ misinterpreted Ciesla's opinion when she stated that it was completed in "October 2013"—it was clearly completed in December 2018, Tr. 527—that error is harmless so long as the ALJ provided other good reasons for discounting the opinion. *See Erica M. v. Saul*, No. 18-CV-456, 2019 WL 4257165, at *10 (N.D.N.Y. Sept. 9, 2019). In this case, the ALJ provided a good reason, finding that Ciesla's opinion was inconsistent with the record. *See* 20 C.F.R. § 416.927(c)(4).

Ciesla's opinion on Plaintiff's absenteeism appears to be premised on findings that Plaintiff's mental health-conditions cause a "pervasive loss of interest" in activities, decreased energy, sleep disturbance, and reduced attention and concentration. Tr. 524. These findings align with Plaintiff's subjective complaints: at the hearing, she testified that she suffers from daily bouts of depression with a need to isolate, Tr. 102, has constant insomnia, Tr. 96-97, and has a fifteen-minute attention span, Tr. 95.

The ALJ did not fully credit these allegations. She noted that Plaintiff's treatment notes "showed infrequent treatment and examinations routinely found little to no abnormalities." Tr. 71. In the ALJ's view, the examination notes generally showed that Plaintiff had adequate grooming and good eye contact, "was relaxed" and "cooperative," and retained good insight and judgment. Tr. 67. Plaintiff did not receive "emergent care for her conditions" and "her admitted activities of daily living further indicate she is capable of more than alleged." Tr. 71. For example, Plaintiff admitted to being the caretaker for her young child, *id.*, managing her household, Tr. 66,

and socializing with friends and family, Tr. 67. And, contrary to Ciesla's opinion, two acceptable medical sources explicitly stated that Plaintiff could maintain a regular schedule. Tr. 340, 389.

On appeal, Plaintiff only takes issue with the ALJ's claims of "infrequent conservative treatment and generally normal examination findings." ECF No. 18-1 at 11. In terms of the frequency of treatment, Plaintiff notes that Ciesla claimed to have treated her "weekly to biweekly" and that Plaintiff received "medication management" every "two to three months." *Id.* Even so, the ALJ could reasonably conclude that Plaintiff did not frequently receive mental health treatment: Plaintiff was discharged from mental health treatment in June 2016, Tr. 414-15, and did not seek treatment again until March 2018—nearly two years later. Tr. 479. As for the mental status examinations, Plaintiff cites some records that show abnormal findings. *See* ECF No. 18-1 at 11. But "[t]he mere fact that evidence exists to support Plaintiff's position is not enough to justify relief." *Emery S. v. Comm'r of Soc. Sec.*, No. 20-CV-662, 2021 WL 2592363, at *4 (W.D.N.Y. June 24, 2021). The ALJ could reasonably rely on the remaining evidence—Plaintiff's daily activities, the normal examination findings at many appointments, her infrequent treatment, and the opinions of two acceptable medical sources—to discount the subjective complaints that formed the basis for Ciesla's opinion on absenteeism. Accordingly, Plaintiff's argument does not justify remand.

**b. Mental-Impairment Opinions**

Next, Plaintiff broadly argues that the ALJ must have relied on her own lay judgment to craft the mental-health portion of the RFC because she only accorded "some weight" to the two medical opinions relevant to her mental impairments. ECF No. 18-1 at 12-17. This argument "is a non-starter." *My-Lein L. v. Comm'r of Soc. Sec.*, No. 20-CV-446, 2021 WL 3266230, at *3 (W.D.N.Y. July 30, 2021).

An ALJ's RFC finding need not "perfectly correspond with any of the opinions of medical sources," since the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). To that end, "[t]here is no absolute bar to crediting only portions of medical source opinions," *Labonte v. Berryhill*, No. 16-CV-518, 2017 WL 1546477, at *3 (W.D.N.Y. May 1, 2017), and an ALJ is free to rely on portions of several opinions to craft the RFC. *See Daniel R. v. Comm'r of Soc. Sec.*, No. 20-CV-589, 2021 WL 1747788, at *4 (W.D.N.Y. May 4, 2021) (concluding that the ALJ did not "improperly substitute his own 'lay' opinion for that of a medical source" but permissibly "drew from aspects of the available medical opinions in formulating the RFC"). In addition, even without a medical opinion, other evidence can be used to support RFC findings. *See, e.g.*, *Amanda P. v. Comm'r of Soc. Sec.*, No. 20-CV-306, 2021 WL 2637437, at *3-4 (W.D.N.Y. June 28, 2021) (rejecting argument that the ALJ created a gap in the record by giving partial weight to medical opinion and noting that the physical RFC was "supported by other evidence in the record," including claimant's own testimony and reports).

Accordingly, an ALJ does not necessarily err when she partially credits two medical opinions in crafting an RFC. Plaintiff's broad assertion to the contrary is rejected. Furthermore, besides one social-interaction limitation—which the Court address below—Plaintiff does not otherwise challenge the particular limitations the ALJ identified to accommodate her mental impairments, and so the Court need not further assess the reasonableness of the mental RFC. *Accord Coley D. v. Comm'r of Soc. Sec.*, No. 20-CV-6541, 2021 WL 2002525, at *3 (W.D.N.Y. May 19, 2021) (declining to assess the ALJ's reasons for giving great weight to a nonexamining source where claimant "develop[ed] no argument as to why such reason[s] [were] either incorrect or impermissible"); *see also United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not

enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

**c. Social-Interaction Limitation**

The ALJ determined that Plaintiff had "no more than [a] moderate limitation" in interacting with others. Tr. 67. For purposes of the RFC, the ALJ accommodated this limitation by restricting Plaintiff to "occasional interactions with co-workers" and precluding her from "public contact." Tr. 68. Plaintiff argues that the ALJ erred by failing "to explain why there was no limitation on interacting with supervisors." ECF No. 18-1 at 17. Plaintiff reasons that her "moderate" social difficulties would ostensibly apply to all social contact, but the ALJ made an unexplained distinction between interactions with supervisors and interactions with co-workers and the public. *Id.* at 17-20.

Even if the Court were to accept Plaintiff's argument, she has not demonstrated harmful error. "The Dictionary of Occupational Titles ('DOT') provides a code, numbered 0-8, for the type of social interaction each occupation requires." *Scott C. v. Comm'r of Soc. Sec.*, No. 20-CV-109, 2021 WL 2682276, at *5 (D. Vt. June 30, 2021) (internal quotation marks omitted). An occupation with a social interaction code of "8" means that "the degree of relation to people required for that position is [n]ot [s]ignificant." *Id.* (internal quotation marks and brackets omitted). Courts have determined that "level 8 interaction is compatible with an RFC limiting a claimant to only superficial contact with coworkers, supervisors, and the public." *Id.* (internal quotation marks and brackets omitted). As the Commissioner correctly notes, three of the performable occupations identified by the vocational expert and listed in the ALJ's decision—sorter, merchandise marker, and small products assembler—involve "level 8" interaction. *See Dictionary of Occupational Titles* §§ 209.587-034, 222.687-014, 706.684-022 (4th ed. 1991).

Therefore, even if the ALJ erred by failing to restrict Plaintiff to limited interactions with supervisors, the error is harmless because inclusion of that restriction would not alter the ALJ's findings at steps four and five. *Accord Whitehorne v. Comm'r of Soc. Sec.*, No. 19-CV-256, 2020 WL 5077025, at * (W.D.N.Y. Aug. 27, 2020) (ALJ's alleged error in limiting interactions with coworkers and general public but not supervisors was harmless where representative occupations could be performed by "individuals who require limited interaction with supervisors"); *Martinez Reyes v. Comm'r of Soc. Sec.*, No. 18-CV-394, 2019 WL 3369255, at *6-7 (W.D.N.Y. July 26, 2019) (same).

**CONCLUSION**

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 25) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 18) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 12, 2021
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York